# United States District Court

**EASTERN** District of **CALIFORNIA**

**FILED**
Sep 01, 2023
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

In the Matter of the Seizure of
(*Briefly describe the property to be seized*)

Approximately $951,843.00 in U.S Currency.

APPLICATION FOR A WARRANT TO SEIZE
PROPERTY SUBJECT TO FORFEITURE

CASE NUMBER:   2:23-sw-0902 JDP

I, a federal law enforcement officer or attorney for the government, request a seizure warrant and state under penalty of perjury that I have reason to believe that the following property in the Eastern District of **CALIFORNIA** is subject to forfeiture to the United States of America (*describe the property*):

Approximately $951,843.00 in U.S Currency.

The property is subject to seizure pursuant to 21 U.S.C. § 881(b) incorporating 18 U.S.C. § 981(b), and subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6), concerning violations of 21 U.S.C. §§ 841(a)(1) and 846.

The application is based on these facts:

**See attached affidavit.**

☒ Continued on the attached sheet.

/s/ Maxim Lashchuk
*Applicant's signature*

Maxim Lashchuk, Special Agent, DEA
*Printed name and title*

Sworn to before me and signed telephonically.

September 1, 2023
Date

Sacramento, California
City and State

*Judge's signature*

Jeremy D. Peterson, U.S. Magistrate Judge
*Printed name and title*

**AFFIDAVIT IN SUPPORT OF APPLICATION FOR A SEIZURE WARRANT**

**INTRODUCTION**

I, Maxim Lashchuk, Special Agent of the Drug Enforcement Administration, being first duly sworn, hereby declare and state as follows:

1. This affidavit is submitted in support of the Government's application for the issuance of a warrant to seize for forfeiture the following:

    a. Approximately $951,843.00 in U.S Currency.

2. This Affidavit is made in support of a warrant to seize the above-referenced currency pursuant to 21 U.S.C. § 881(b) incorporating 18 U.S.C. § 981(b). The currency identified above is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) because it represents proceeds from the sale of controlled substances or is traceable thereto, or was used or intended to be used to facilitate federal drug crimes, all in violation of 21 U.S.C. §§ 841(a)(1) and 846 (Conspiracy to Distribute and Possess with Intent to Distribute Controlled Substances).

3. Specifically, the facts set forth below establish probable cause to believe that Jorge Luis Avalos Sr., and his three sons, Jose Juan Antonio Avalos, Jorge Luis Avalos Jr., and Marcus Emiliano Avalos, all between 19-23 years old, were involved in the distribution of large quantities of suspected heroin (Schedule I), marijuana (Schedule I), cocaine (Schedule II), methamphetamine (Schedule II), fentanyl (Schedule II) and other controlled substances in the Eastern District of California. The facts further establish that large amounts of controlled substances and large amounts of cash gained from illicit drug transactions were kept on the property of 1537 Barnwood Lane, Roseville, California where AVALOS and his family lived.

**BACKGROUND, TRAINING AND EXPERIENCE OF AFFIANT**

4. I am a Special Agent of the United States Department of Justice, Drug Enforcement Administration ("DEA") and have been so employed since September 2014. I am an "investigative or law enforcement officer" within the meaning of Section 2510(7) of Title 18 of the United States Code, that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Section 2516 of Title 18 and Title 21 of the United States Code. I am also a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C).

5. I completed DEA Basic Agent training at the DEA's Training Academy in Quantico, Virginia, where I received specialized training in narcotics investigations, to include training in the Controlled Substance Act, as set out in Title 21 of the United States Code of Federal Regulations, including but not limited to Sections 841 and 846, Controlled Substance Violations and Conspiracy to Commit Controlled Substance Violations, respectively. Further, I received training in search and seizure law, drug identification, drug-trafficking trends and methods, evidence gathering, undercover operations, physical and electronic surveillance, and many other facets of drug investigations. After completing Basic Agent training, I was assigned to the DEA's

Sacramento District Office, Task Force Group, tasked with investigating major drug trafficking organizations operating in the Eastern District of California.

6. During the course of my employment as a DEA Special Agent, I have participated in numerous investigations targeting individuals involved in the trafficking of controlled substances, including but not limited to, heroin, fentanyl, methamphetamine, cocaine, cocaine base, marijuana, and counterfeit pharmaceutical drugs. I participated in the execution of numerous search warrants involving the aforementioned controlled substances, the seizure of drug-related records, and other evidence that documents the activities of criminal organizations in both the manufacturing and distribution of controlled substances. During the course of these investigations, I have utilized a variety of investigative techniques and resources, including physical and electronic surveillance, and various methods of infiltration, including undercover agents, informants, and cooperating sources. These investigations resulted in the seizure of controlled substances, drug proceeds, and the arrests and convictions of numerous individuals. Through these investigations, my training and experience, and conversations I have had with other agents and law enforcement officers, I am familiar with the methods used by drug traffickers to manufacture, transport, store, and distribute controlled substances, and to collect and launder drug proceeds.

7. Unless stated otherwise, I have personal knowledge of the matters set out in this affidavit. To the extent that any information in this affidavit is not within my personal knowledge, it was made known to me through my own review of the documents discussed in this affidavit and through reliable law enforcement sources, including discussions with other law enforcement agents and officers assigned to this case. The conclusions and opinions set forth below are based on my training and experience as a DEA Special Agent, and conversations I had with other law enforcement officers who are familiar with the facts and circumstances of this investigation. Because this Affidavit is being submitted for the limited purpose of securing a Seizure Warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary and appropriate to establish probable cause for the warrant requested herein.

## PROBABLE CAUSE

8. On August 21, 2023, at approximately 6:16 p.m. California Highway Patrol (CHP) Officer Rey Garcia-Barron made a vehicle enforcement stop of a 2019 Toyota Tacoma with California license plate 31831V2 travelling southbound on SR-99 just north of Lodi, California. The traffic stop was initiated due to the Toyota changing lanes without using a turn signal and for driving above the speed limit.

9. The Toyota was registered to Susie Violet Avalos at 1537 Barnwood Lane, Roseville, California. Jorge Luis Avalos Sr., (hereafter "AVALOS") was the driver and Jose Juan Antonio Avalos (hereafter "JOSE") was the passenger. Based on the nervousness of AVALOS and JOSE after Officer Garcia-Barron contacted them and the conflicting stories they told of where and why they were traveling southbound, the assisting CHP Officer Eric Lagge deployed his drug detection dog "Action" to conduct an open-air sniff of the Toyota. Prior to doing the open-air sniff on the Toyota, AVALOS, denied having any narcotics in the vehicle and claimed that everything in the Toyota belonged to him. Officer Lagge observed Action make a positive alert for the odor of narcotics emanating from inside the Toyota. During a probable cause search of the Toyota, under the driver's

side front floor mat, Officer Garcia-Barron located a vacuum sealed FoodSaver clear plastic bag which contained a brick shaped object. The substance inside the FoodSaver bag was subsequently field tested using a TRU NARC and it presumptively tested positive for cocaine with a gross weight of 1,090 grams. The outer vacuum sealed FoodSaver packaging of the cocaine had the markings of "WP." Officers also located $5,492.00 in cash inside the Toyota.

10. Both JOSE and AVALOS were arrested on California state charges for Possession of Controlled Substance for Sale and Transport of Controlled Substance and advised of their *Miranda* Rights. JOSE refused to answer questions but AVALOS stated that he was traveling from his wife's (Susie Violet Avalos, the registered owner of the Toyota) house in Roseville. AVALOS stated that he did not live there but did "stay there sometimes."

11. Based on the large amount of cocaine and cash located in the Toyota, and since AVALOS told officers that he came from his wife's home in Roseville, CHP Officers contacted Tri-County Drug Enforcement Team (TRIDENT) based in Roseville, California and passed the information and the seized evidence to TRIDENT. Based on the information gathered from the CHP traffic stop and on the suspicion that more controlled substances and drug proceeds may be located at 1537 Barnwood Lane, Roseville, California, TRIDENT along with DEA agents and detectives from the Roseville Police Department (PD) established surveillance at 1537 Barnwood Lane while a state search warrant was being obtained for the residence.

12. Upon arriving to 1537 Barnwood Lane, Roseville, California on August 21, 2023, I saw a Toyota Tundra registered to Jorge Luis Avalos at 1537 Barnwood Lane, Roseville, California, parked in the driveway and a Toyota Sienna van registered to Susie V. Avalos at 1537 Barnwood Lane, Roseville, California. Commercial databases showed that AVALOS was associated to 1537 Barnwood Lane, Roseville, California since 2019 and in 2016 AVALOS was associated with an address in San Francisco, California. Therefore, I believed that 1537 Barnwood Lane, Roseville, California was AVALOS' current residence.

13. I made inquiries with the National Crime Information Center (NCIC) and learned that AVALOS' wife and three sons did not have a criminal history. However, AVALOS has a criminal history in the state of California which includes the following conviction: In 1993, AVALOS was convicted of a felony for Conspiracy to Commit Crime while Armed with a Firearm which occurred while AVALOS was in possession of a Controlled Substance. In 1994, AVALOS was deported to Mexico. Prior to AVALOS' deportation, between 1991 and 1993, AVALOS was arrested many times for drugs, assault with a deadly weapon, attempted robbery, concealed carry of a weapon in a vehicle, and participation in a criminal street gang, but all of these charges were dismissed either due to insufficient evidence or in furtherance of justice.

14. After the state search warrant was obtained from the Placer County Superior Court for 1537 Barnwood Lane and for all the vehicles present in the driveway, at approximately 9:22 p.m., surveillance saw the Toyota Sienna depart 1537 Barnwood Lane. A Roseville PD patrol unit made a traffic stop and detained Jorge Luis Avalos Jr. (hereafter

"JORGE") and Marcus Emiliano Avalos (hereafter "MARCUS") who were inside the Toyota Sienna.

15. At approximately 9:55 p.m., Roseville PD SWAT approached 1537 Barnwood Lane and activated their police lights in preparation of executing the search warrant. Susie Violet Avalos (hereafter "SUSIE") exited 1537 Barnwood Lane and told officers that no one else was inside the house and that she lived there with her husband and sons. A security sweep of the house resulted in no additional people being located inside. SUSIE was asked if there were any narcotics, guns, or large sums of currency inside the residence, and SUSIE claimed there was not, and that the only cash she had was inside her purse.

16. I noted that the home consisted of four smaller bedrooms and one master bedroom. A drug detection dog was used to search the house and the dog alerted to many areas throughout the house to include a positive alert in every bedroom for the presence of the odor of narcotics.

17. Inside one of the bedrooms (hereafter "Bedroom-1") that appeared to be used by one of AVALOS' sons, law enforcement found approximately 2,726 grams of suspected cocaine. Amongst this cocaine, there was a rectangular shaped kilogram sized package with the markings of "WP" on the other layer of the vacuum sealed FoodSaver plastic bag. Also, multiple opened FoodSaver plastic wrappers with the markings of "WP" were found in the same bedroom. Based on my training and experience, I believe this was the outer packaging left over from the kilograms of cocaine which were already opened and likely sold. I noted that the packaging of this cocaine and the "WP" markings were the same as on the kilogram of the cocaine which was seized from inside the Toyota Tacoma AVALOS was driving. Based on my training and experience, I know that drug trafficking organizations mark their drugs with a distinct marking or label to distinguish their product from that of their competitors. In other words, drugs with the same markings generally come from the same source of supply. Therefore, I believe that AVALOS stored the kilograms of cocaine at his Roseville residence and distributed the cocaine with the help of his sons.

18. Further, in Bedroom-1, officers located approximately 1,050 grams of suspected heroin, approximately 460 grams of suspected methamphetamine, approximately 860 grams of suspected counterfeit blue M-30 Oxycodone tablets and approximately 232 grams of suspected counterfeit Xanax tablets which based on my training and experience generally contain fentanyl or its analogues, and many other controlled substances in various weights and packaging. In this bedroom, officers located cash which was held together with rubber bands. Subsequently, an official count of $16,758.00 in U.S. Currency was obtained at the bank. The majority of the currency denominations were in $20 bills (207 of $20 bills total) which based on my training and experience is a common bill denomination for street level drug sales.

19. In an adjacent bedroom (hereafter "Bedroom-2") that appeared to be used by one of AVALOS' sons, inside the closet, law enforcement found a black duffle bag. Inside this black duffle bag, law enforcement found a plastic grocery bag filled with mostly $20 bills held together by rubber bands and another red cloth bag filled with mostly $100 bills held together by multiple rubber bands. A subsequent official count was obtained at the bank

totaling to be $388,735.00 in U.S. Currency with the majority of the currency denominations in $20 bills (3,454 of $20 bills total). Inside Bedroom-2 officers also located many clear plastic resealable food saver bags with currency counts written on the bags. Based on my training and experience, I believe these empty resealable food saver bags were previously used to store and transport large amounts of drug proceeds which drug traffickers eventually take to their sources of supply when obtaining additional drugs.

20. In the third bedroom that appeared to be used by one of AVALOS' sons, officers found multiple firearms and approximately several pounds of marijuana bud.

21. In the master bedroom, where officers located indicia of both AVALOS and SUSIE, three firearms were located and seized. AVALOS is a convicted felon and it's illegal for him to possess firearms or ammunition. Behind a cabinet drawer, I located a black duffle bag with mostly $100 bill denominations held together by rubber bands. A subsequent official count was obtained at the bank totaling $546,350.00 in U.S. Currency.

22. Law enforcement also located a digital money counter in the residence. JORGE and MARCUS were subsequently arrested on California state charges for Possession of a Controlled Substance for Sale, Conspiracy to Commit Crime, Possess Drugs While Armed, and Possess Money from Sale of Drugs.

23. The $16,758.00 seized from Bedroom-1, $388,735.00 seized from Bedroom-2, and $546,350.00 seized from the master bedroom (total of $951,843) were placed in separate evidence bags and a narcotics canine positively alerted to the odor of narcotics emanating from all three amounts of cash. After the money was placed inside the self-sealing evidence bags, I showed all three amounts of cash to SUSIE and asked her if she would like to claim ownership of any of the cash. SUSIE declined ownership of any of the cash at which point the evidence bags were sealed in front of her and subsequently seized by the DEA.

24. Based on my training and experience, I believe that AVALOS and his three sons all live at 1537 Barnwood Lane, Roseville, California and they were all involved in the distribution of large quantities of suspected heroin, marijuana, cocaine, methamphetamine, fentanyl, and other controlled substances found at their home. I believe that the cash located at 1537 Barnwood Lane, Roseville, California is drug proceeds from the sale of the controlled substances. I know that drug traffickers keep bulk cash proceeds derived from their illicit operations at their residences to avoid raising suspicion when depositing such large sums into a bank. Also, drug traffickers need bulk cash to pay for additional drugs. The large amounts of controlled substances seized from this residence is more consistent with a for profit operation than possession for personal use.

## CONCLUSION

25. Based on the events and evidence outlined in this Affidavit, my training and experience, and the training and experience of the agents and officers that I have consulted with in preparing this Affidavit, there is probable cause to believe that the $951,843.00 in U.S.

Currency located at 1537 Barnwood Lane, Roseville, California, 95747 is drug proceeds from the sale of controlled substances or was used or intended to be used to facilitate federal drug crimes.

26. I request the issuance of a seizure warrant against the following property as proceeds from the distribution and sale of controlled substances or as property used or intended to be used to facilitate federal drug crimes:

    a. Approximately $951,843.00 in U.S Currency.

/s/ Maxim Lashchuk
Maxim Lashchuk
Special Agent
Drug Enforcement Administration

Reviewed and approved as to form:

/s/ Kevin C. Khasigian
Kevin C. Khasigian
Assistant U.S. Attorney

Sworn to and subscribed telephonically,
on the 1st day of September 2023.

HON. JEREMY D. PETERSON
United States Magistrate Judge

# United States District Court

**EASTERN** District of **CALIFORNIA**

In the Matter of the Seizure of
(*Briefly describe the property to be seized*)

Approximately $951,843.00 in U.S Currency.

**WARRANT TO SEIZE PROPERTY SUBJECT TO FORFEITURE**

CASE NUMBER: 2:23-sw-0902 JDP

To:   Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests that certain property located in the Eastern District of CALIFORNIA be seized as being subject to forfeiture to the United States of America. The property is described as follows:

**Approximately $951,843.00 in U.S Currency.**

The property is subject to seizure pursuant to 21 U.S.C. § 881(b) incorporating 18 U.S.C. § 981(b), and subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6).

I find that the affidavit(s) and any recorded testimony establish probable cause to seize the property.

**YOU ARE COMMANDED** to execute this warrant and seize the property within 14 days in the daytime 6:00 a.m. to 10:00 p.m. You must also give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

An officer present during the execution of the warrant must prepare, as required by law, an inventory of any property seized and the officer executing the warrant must promptly return this warrant and a copy of the inventory to JEREMY D. PETERSON or Any U.S. Magistrate Judge in the Eastern District of California.

September 1, 2023 at 1:18 p.m.
Date and Time Issued

*Judge's signature*

Sacramento, California
City and State

Jeremy D. Peterson, U.S. Magistrate Judge
*Printed name and title*

AO 109 (Rev. 11/13) Warrant to Seize Property Subject to Forfeiture (Page 2)

| RETURN |||
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of:

Inventory of the property taken:

## CERTIFICATION

    I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

Subscribed, sworn to telephonically, and returned before me this date.

_____    _____
U.S. Judge or Magistrate    Date